UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SHMUEL FOLGER,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**NAVY FEDERAL CREDIT UNION**<br><br>    **Defendant.** | Civ. No. 22-00198 (KM) (AME)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Shmuel Folger filed this civil action in New Jersey state court against Defendant Navy Federal Credit Union ("NFCU"), a credit union at which Mr. Folger maintains a checking account. Mr. Folger alleges that after he deposited four checks into his checking account in October 2021, NFCU breached the parties' contract by temporarily freezing his account and subsequently declining two of the four deposit transactions.

Now before the Court is NFCU's motion to dismiss Mr. Folger's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons expressed below, NFCU's motion to dismiss is **GRANTED**.

**I.    BACKGROUND**[1]

On November 30, 2021, Mr. Folger filed the complaint in this action in the Superior Court of New Jersey, Law Division, Hudson County. (DE 1 Ex. 1.)

---

[1] Certain citations to record are abbreviated as follows:

    "DE" = Docket entry number in this case

    "Compl." = Mr. Folger's complaint (DE 1 Ex. 1)

    "Mot." = NFCU's Memorandum of Law in Support of Defendant Navy Federal Credit Union's Motion to Dismiss Plaintiff Shmuel Folger's Complaint (DE 8)

    "Contract" = NFCU's "Important Disclosures" document, purportedly setting forth the parties' obligations in connection with membership in NFCU (DE 8 Ex. A)

For purposes of this motion to dismiss, the allegations of the complaint are assumed to be true. They are as follows:

The complaint relates to Mr. Folger's attempt to deposit a total of $71,400.48 into his NFCU checking account in October 2021. Mr. Folger deposited four checks: 1) Check #2501 in the amount of $26,000; 2) Check #2170 in the amount of $10,000; 3) Check #2503 in the amount of $15,200; and 4) Check #1008 in the amount of $20,200.48. (Compl. ¶¶ 6, 8, 10, 12.) On October 11, 2021, Mr. Folger received a notification from NFCU confirming that the checks were deposited and under review. (Compl. ¶ 14.) Soon after that, Mr. Folger allegedly received a second notification from NFCU stating that NFCU had completed its review and accepted the checks for deposit subject to a standard two-day hold. (Compl. ¶ 15.) Despite this second confirmation, on October 12, 2021, NFCU froze Mr. Folger's account, leaving him able to access only $2,000.[2] (Compl. ¶ 16.) Mr. Folger then arranged for the payor of Check #1008 to wire the funds directly to Folger's account at NFCU.[3] NFCU also subsequently released the funds for Check #2170 ($10,000). (Compl. ¶ 31.) It seems to be conceded that Mr. Folger received the funds represented by check # 1008 and check # 2170, if belatedly.

---

"Opp." = Mr. Folger's "Opposition to Plaintiff's Motion to Dismiss" (DE 10-1)

[2] According to Mr. Folger, NFCU "kept on changing its story" and never provided him with a reasonable explanation for why it froze his account. (Compl. ¶ 35.) NFCU allegedly stated that the freeze was put into effect "to ensure the check will be paid by the paying financial institution," and that the funds would be released within five business days. (Compl. ¶ 19.) Mr. Folger alleges that NFCU's statements were misleading because he had already shown proof that funds were available in the accounts from which the checks were issued and NFCU did not release all the funds as it said it would. (Compl. ¶¶ 20-21.) Mr. Folger also alleges that NFCU informed him that Check #1008 was put on hold because the issuing institution flagged the issuing account for potential fraud. (Compl. ¶ 32.) Mr. Folger claims this, too, was misleading because he investigated NFCU's claim himself and the issuing institution informed him there was no such record of potential fraud. (Compl. ¶ 33.)

[3] The implication seems to be that the wired funds were properly credited to Mr. Folger. Check #1008 bounced, however, apparently because the wiring left insufficient funds in the issuing account. (Compl. ¶¶ 28-29.)

The real thrust of the complaint, then, pertains to the two remaining checks, Check #2501 ($26,000) and Check #2503 ($15,200). In his complaint, Folger alleges that by failing to release these funds, NFCU breached the parties' contract and therefore owes him the amounts associated with those two checks, which total $41,200.[4]

On January 14, 2022, NFCU timely removed the case to this Court, asserting federal subject matter jurisdiction under the diversity statute, 28 U.S.C. § 1332. (DE 1.) On March 25, 2022, NFCU filed the present motion to dismiss Mr. Folger's complaint for failure to state a claim. (DE 8.) On April 7, 2022, having received no timely opposition, NFCU filed another brief in which it noted that its motion was unopposed. (DE 9.) On April 11, 2022, Mr. Folger wrote to the Court, requesting that the Court accept an opposition brief filed out of time. (DE 10.) On April 12, 2022, I granted Mr. Folger's request and accepted his opposition brief, which he had attached to his letter. (DE 11.)

In his opposition brief, Mr. Folger voluntarily withdrew four tort claims he originally included in his complaint. He asserts that, as a result, the case should be remanded to state court because the $75,000 amount-in-controversy requirement for diversity jurisdiction is no longer met. (Opp. at 5.) On April 20, 2022, NFCU filed a reply brief in support of its motion to dismiss. (DE 12.) The motion to dismiss is thus fully briefed and ripe for decision.

## II.   DISCUSSION

### A. Subject Matter Jurisdiction

Having withdrawn Counts 2 through 5 of the complaint and disclaimed punitive damages, Mr. Folger argues that this Court no longer has diversity subject matter jurisdiction over the case. The damages for the remaining contract claim, he asserts, would no longer exceed the jurisdictional threshold of $75,000. (Opp. at 5.) As a result, says Mr. Folger, the case must be

---

[4]   Mr. Folger also asserted various tort claims in his complaint, which he has since withdrawn. The only live claim that remains is Count 1 for breach of contract (*See* Compl. ¶¶ 41-56; Opp. at 4-5.)

remanded to state court. NFCU responds that jurisdiction is measured by the allegations of the complaint, and is not destroyed by later developments, such as Mr. Folger's withdrawal of counts.

Diversity jurisdiction is based on an action between citizens of different states[5] in which the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1); *Douglas v. Jones*, 656 Fed. App'x 602, 604 (3d Cir. 2016). The court discerns the amount in controversy by consulting the face of the complaint and accepting the plaintiff's good faith allegations. *Id.* "[A] court can dismiss the case only if there is a legal certainty that the plaintiff cannot recover [the jurisdictional amount]." *Coulter v. Paul Laurence Dunbar Community Ctr.*, 685 Fed. App'x 161, 164–65 (3d Cir. 2017) (quoting *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997)). As is often the case, the amount-in-controversy inquiry is here complicated by the New Jersey state court practice of not specifying a dollar amount in the complaint's prayer for unliquidated damages. N.J. Ct. R. 4:5-2.

Here, Mr. Folger's complaint seeks damages "in such amounts as will be proven at trial," including compensatory damages, punitive damages, attorney's fees and costs, and any other relief the Court deems just and proper. For his contract claim, the $41,200 total of the two checks would probably put a ceiling on the lost benefit of the bargain, and neither consequential nor punitive damages would generally be available on a contract claim. *See Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 13 (2004) ("[I]n a breach-of-contract case, the innocent party must be given the benefit of his bargain and placed in as good a position as he would have been in had the contract been performed.") (quotations and citations omitted); *see also* Bolton v. McKinney, 299 Va. 550, 554 (2021) ("The remedy for a breach of contract 'is intended to put the injured party in the same position in which it would have been had the contract been

---

[5]  This requirement is satisfied. The parties appear to agree that Mr. Folger is a citizen of New Jersey and NFCU, a credit union not incorporated in any state, is considered a citizen of Virginia, its principal place of business. (DE 1 ¶ 6; 28 U.S.C. § 1332(c).)

performed.'") (quoting *Marefield Meadows, Inc. v. Lorenz*, 245 Va. 255, 261, 427 S.E.2d 363 (1993)). But the complaint also seeks, for example, an award of damages and punitive damages for the tort claims of fraud and emotional distress. (Compl. ¶¶ 40, 45, 49, 53, 56.) Thus I cannot say to a legal certainty that Mr. Folger could not recover over $75,000 in compensatory and punitive damages for the several claims he originally asserted. Diversity jurisdiction would thus be proper based on the face of the complaint as filed, and shortly thereafter removed from state court.

The question remaining is whether Mr. Folger's subsequent abandonment of four of his five claims, and disclaimer of punitive damages, would change the jurisdictional analysis. Mr. Folger is free to reduce his claim, but doing so does not divest this Court of subject matter jurisdiction. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938) ("And though, as here, the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction."); *Mahoney v. Harrah's Atl. City Operating Co., LLC*, No. 121CV12726NLHMJS, 2021 WL 4482777, at *2 (D.N.J. Sept. 30, 2021) ("It is Plaintiff's prerogative to limit the damages she seeks at any time, but a change in that position after a proper removal does not divest the Court of subject matter jurisdiction over her case."); *Colarulo v. Walmart, Inc.*, No. 121CV16693NLHKMW, 2021 WL 4428279, at *2 (D.N.J. Sept. 27, 2021) ("It is Plaintiff's prerogative to limit the damages he seeks, but that decision does not impact this Court's subject matter jurisdiction over his case.").

This Court has subject matter jurisdiction to adjudicate Mr. Folger's breach of contract claim. I therefore proceed to consider NFCU's Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim.

### B. Failure to State a Claim

#### 1. Legal Standard

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in Plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

#### 2. Analysis

Mr. Folger's complaint fails to state a claim for breach of contract. As that is currently Mr. Folger's only live claim, the complaint must be dismissed.

To establish a breach of contract claim, a claimant must show (1) "that the parties entered into a valid contract"; (2) "that the defendant failed to perform [its] obligations under the contract"; and (3) "that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 392 N.J.Super. 245, 920 A.2d 678, 689 (App. Div. 2007).[6]

As an initial matter, Mr. Folger's complaint does not identify what contract or what specific contractual obligation he is claiming NFCU has

---

[6] Here, NFCU contends—and Mr. Folger does not dispute—that Virginia law applies to the contract claim because of the underlying contract's choice of law provision. (MTD at 10 n. 3.) I am not directed to any relevant conflict between New Jersey law and Virginia law as it pertains to the basics of contract interpretation and breach. Nor are those basics of contract law particularly relevant to the motion before the court, which asserts that the complaint fails to plead the existence and relevant provisions of the contract and therefore fails to comply with federal pleading standards.

breached. He did not attach a copy of the contract to the complaint so that the Court might determine for itself what NFCU's obligations were, and which one is serving as the basis for Mr. Folger's lawsuit. That pleading deficiency alone warrants dismissal. *Khorchid v. 7-Eleven, Inc.*, No. CV 18-8525 (JBS/JS), 2018 WL 5149643, at *9 (D.N.J. Oct. 22, 2018) ("Failure to allege the specific provisions of contracts breached is grounds for dismissal."); *Skypala v. Mortgage Electronic Registration Systems, Inc.*, 655 F.Supp.2d 451, 459 (D.N.J. 2009) (dismissing claim where "the Complaint does not identify the provisions Plaintiff asserts were breached"). The main allegations in the complaint that seem to relate to Mr. Folger's breach of contract claim—that NFCU 1) improperly froze all the money in Mr. Folger's account save $2,000 (Compl. ¶¶ 16, 23, 24, 38), and 2) refused to release more than $10,000 after freezing the account (Compl. ¶¶ 18, 21, 40)—do not plausibly set forth an identifiable breach of contract. Mr. Folger asserts only that NFCU "did not have the right" to freeze his account (Compl. ¶¶ 23-24), and that doing so was "wrong" and "illegal." (Compl. ¶¶ 38) Without some allegation of what NFCU's contractual obligations were, these conclusory statements do not give rise to an inference that NFCU failed to perform those obligations. *See generally Twombly, supra; Iqbal, supra.*

Of course, this complaint was filed in New Jersey state court, where federal pleading standards do not apply. For that reason and others,[7] I will grant Mr. Folger leave to amend his complaint. For the guidance of the parties

---

[7]    I would ordinarily permit a plaintiff at least one opportunity to amend an inadequately pleaded complaint in any event. The Third Circuit has liberally permitted pleading amendments to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chern. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). Indeed, where a complaint is dismissed on Rule 12(b)(6) grounds, "a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (emphasis added); *accord Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)).

going forward, I address some other issues raised in the briefs regarding the motion to dismiss.

NFCU has attached to its brief a copy of what it says must be the contract to which Mr. Folger's complaint is referring.[8] (Contract, DE 8 Ex. A) NFCU asserts that this Contract governs the parties' relationship and expressly authorizes the actions that Mr. Folger identifies as breaches. (Mot. at 11-12.) For instance, the contract provides that NFCU possesses the right to "restrict or suspend" Mr. Folger's access to his account based on conduct that is "suspicious" or "fraudulent," as well as to "reverse or adjust any transaction" without prior notice if NFCU believes the deposit is erroneous or should not have been made. (Contract at 1, 7.) The contract also gives NFCU the right to delay availability of funds for checks larger than $225, particularly if NFCU has reason to believe a check may not be honored by the issuer's bank. (Contract at 9.) Finally, NFCU also has the right to "revoke any settlement" with respect to a check it accepted. (Contract at 10.)

Actually, Mr. Folger concedes in his opposition brief that NFCU does have the "authority to restrict or suspend an account, to reverse a transaction, and to delay availability of funds under certain circumstances." (Opp. at 4.) He then attempts to clarify his breach of contract claim with two new theories, stating that he initiated the action because 1) NFCU did not "give any specific reason" for the actions it took with respect to his account, and 2) "the money

---

[8] When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

8

was removed from his account and never was returned to the issuing account." (*Id.*)[9]

In his first theory, Mr. Folger again fails to point to any specific provision of the contract that requires NFCU to provide him with a binding explanation when it froze his account or revoked the settlement of certain checks he attempted to deposit, or exposes it to damages for failing to do so in a coherent manner. In drafting any amended complaint, this deficiency should be borne in mind.

As for the second argument, that NFCU is in breach because it failed to return funds to the issuing account, the claim is unclear. In addition, there may be a standing problem. Assuming the issuer of the check is any person other than Mr. Shmuel Folger himself,[10] plaintiff may lack standing to assert a claim regarding the failure to return another individual's funds to that other individual. *See Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 538 (3d Cir. 1994) (holding that a litigant must "assert his [or her] own legal interests rather than those of third parties") (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985)).[11]

---

[9]    "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)); *Ultra Logistics, Inc. v. A First Class Sol.*, LLC, No. 219CV09493JMVJAD, 2019 WL 7047243, at *3 (D.N.J. Dec. 23, 2019). Again, however, I discuss the issues raised as they may bear on the drafting of any amended complaint.

[10]   Defendant NFCU attaches to its brief what purport to be copies of the two checks primarily at issue, both drawn on Bank of America and having "Shnueil Folger /dba Shnueil Folger Solo Prop" as payor.

[11]   NFCU also contends that because Mr. Folger's breach of contract claim is based on the premise that NFCU failed to make deposited funds available to him within a certain timeframe and subsequently revoked certain transactions, his claim is "fully preempted." (Mot. at 7-8.) Federal law, NFCU argues, exclusively governs NFCU's actions regarding availability of deposited checks—specifically the Expedited Funds Availability Act ("EFAA") as implemented by the Federal Reserve Board through Regulation CC, 12 C.F.R. § 229, *et seq*. While the availability of deposited funds is central to Mr. Folger's suit, there are allegations in the complaint that fall outside of

9

Mr. Folger's complaint does not state a claim for breach of contract. Count 1 of the complaint must be dismissed. As Mr. Folger has stated his intent to drop the remaining counts, and as he is in any event being granted leave to amend, this dismissal without prejudice will extend to the entire complaint.

### III.  CONCLUSION

For the reasons set forth above, NFCU's motion to dismiss is **GRANTED**. The dismissal is granted without prejudice. Leave is granted to submit an amended complaint within 30 days, without the necessity of a formal motion to amend. If no amended complaint is filed, the dismissal shall become one with prejudice.

An appropriate order follows.

Dated: November 4, 2022

/s/ Kevin McNulty

---

**Hon. Kevin McNulty**
**United States District Judge**

---

this specific regulated area. For instance, Mr. Folger seems to allege that NFCU committed a breach by freezing his entire account, not just the funds from the four checks he deposited. (Compl. ¶¶ 16, 24.) Similarly, Mr. Folger appears to allege that NFCU committed a breach by failing to provide him with a legitimate basis for its actions with respect to his account. (Compl. ¶¶ 25-26.) I therefore cannot find, at least at the pleading stage, that the EFAA and Regulation CC so completely preempt Mr. Folger's breach of contract claim as to require its dismissal. Whether to bring such a federal-law claim in an amended complaint is a separate question.